IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02439-MEH

PAYMENT BROKERS GROUP, LLC,

    Plaintiff/Counter Defendant,

v.

AGENTRA, LLC,
DAVID LINDSEY, individually and d/b/a BRIGHT IDEA DENTAL,
MYHEALTHPASS, LLC,
INNOVATIVE HEALTH INSURANCE PARTNERS, LLC, and
BID DENTAL LLC,

    Defendants/Counter Claimants/Third-Party Plaintiffs,

v.

ELECTRONIC PAYMENT SYSTEMS, LLC,

    Third-Party Defendant.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Defendants/Counter Claimants/Third-Party Plaintiffs Agentra LLC, David Lindsey, (individually and d/b/a Bright Idea Dental), MyHealthPass, LLC, Innovative Health Insurance Partners, LLC, and Bid Dental LLC (collectively, "Third-Party Plaintiffs") assert five claims against Plaintiff/Counter Defendant Payment Brokers Group, LLC ("PBG") and Third-Party Defendant Electronic Payment Systems, LLC ("EPS"). Third-Party Plaintiffs' claims are for civil theft, "money had and received" against EPS, violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-110 *et seq.* ("CCPA"), conspiracy to commit civil theft, and joint venture.

EPS and PBG have filed a motion to dismiss ("Motion") on the claims of civil theft, violating the CCPA, conspiracy to commit civil theft, and joint venture. For the following reasons, the Motion is granted.

## BACKGROUND

The following factual allegations are drawn from PBG's Second Amended Complaint ("SAC") as well as Third-Party Plaintiffs' Amended Complaint, Third-Party Complaint, and Counterclaim ("Third-Party Complaint"), ECF 41; ECF 50. The allegations in the Third-Party Complaint are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

PBG is a company located in Colorado that handles "credit card and debit card processing." ECF 41 at 1-4, ¶¶ 1, 14. The allegations in the SAC describe contracts executed "on or about" March 1, 2019 titled "Preferred Pricing and Business Continuation Plan." *Id*. at 3-4, ¶¶ 10-13. All four contracts[1] stipulated the following:

> [Third-Party Plaintiffs] would receive a "Preferred Discount Rate" for credit card and debit card processing (2.89 Base Rate) as well as ACH transactions that go into effect as of March 1, 2019 for all accounts controlled by [PBG]. As consideration for the "Preferred Discount Rate," each of these contracts required [Third-Party Plaintiffs] to continue to process transactions at the current dollar volumes of higher for a period of not less than three (3) years.

*Id*. ¶ 14, 15.

PBG alleges that after signing the contracts Third-Party Plaintiffs reduced volumes to take advantage of the pricing structure in the contracts and, as a result, "received discounts of millions of dollars" that Third-Party Plaintiffs were not qualified to receive. *Id*. ¶ 17. PBG contends that as

---

[1] These contracts are between PBG and Agrenta LLC, MyHealthPass, LLC, Innovative Health Insurance Partners, LLC, and Bid Dental LLC.

2

"a result of [Third-Party Plaintiffs'] actions and inactions, PBG has been harmed in excess of Two Million ($2,000,000) Dollars." *Id*. at 5, ¶ 22.

Now at issue is the Third-Party Complaint against PBG and EPS. EPS is a Colorado limited liability company that processes "credit card, debit card, and ACH transactions for their clients," and "PBG and EPS have the same leadership via John Dorsey and Anthony Maley." ECF 50, at 6-7, ¶¶ 9-12. Third-Party Plaintiffs allege that in 2018 they had no knowledge of any relationship between PBG and EPS in terms of processing credit card, debit card, and ACH transactions *Id*. at 7, ¶ 12.

After PBG and/or EPS processed Third-Party Plaintiffs' transactions from 2018 to 2020, they "chose to go elsewhere for the processing of their credit card, debit card, and ACH transactions." *Id*. ¶ 13. Third-Party Plaintiffs claim that PBG saw the volume of transactions depleted and then

> fraudulently affixed Lindsey's signature to the agreements and merchant applications with PBG and EPS. In particular, the "Preferred Pricing and Business Continuation Plan" required [Third-Party Plaintiffs] to continue to process their credit card, debit card and ACH transactions at the current dollar volumes or higher for a period of not less than three (3) years. Although Third-Party Plaintiffs knew PBG was one of the processors they used, Third-Party Plaintiffs were fully unaware of any contractual obligation to process a certain volume of transactions with PBG.

*Id*. ¶ 14

During this time, Richard Chalker ("Chalker"), the husband of a former PBG employee, entered into referral contracts with PBG and EPS. *Id* at 7-8, ¶ 15. The Third-Party Plaintiffs allege Chalker received a portion of Third-Party Plaintiffs' revenue from these referral contracts by taking a commission of the profit. *Id*.

Third-Party Plaintiffs also contend that PBG in conjunction EPS "withheld or misappropriated $314,932.95," which were the ACH proceeds from April 13, 2020 to April 21,

3

2020 ("Funds"). *Id* at 8, ¶ 17. The Third-Party Complaint states PBG and EPS have not told Third-Party Plaintiffs the whereabouts of the Funds and that EPS refuses to return them. *Id* at 8, ¶¶ 17-18.

## LEGAL STANDARDS

**I.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

4

Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

II.   **Dismissal Pursuant to Fed. R. Civ. P. 9(b)**

Pursuant to Fed. R. Civ. P. 9(b), a more stringent pleading standard is mandated for certain claims, such as fraud or misrepresentation. "For any claim alleging fraud, the circumstances constituting fraud or mistake must be stated with particularity." *In re Accelr8 Tech. Corp. Secs. Litig.*, 147 F.Supp.2d 1049, 1054 (D. Colo. 2001) (citing Fed. R. Civ. P. 9(b)).  Thus, with regard to Third-Party Plaintiffs' claims for violating the CCPA and civil theft, Third-Party Plaintiffs must plead "the who, what, when, where, and how of the alleged fraud" or in other words, "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006); *see also HealthONE of Denver, Inc. v. UnitedHealth*

*Grp., Inc.*, 805 F. Supp. 2d 1115, 1120–21 (D. Colo. 2011) ("a plaintiff must meet the heightened pleading requirements pursuant to Rule 9(b) to prove a deceptive or unfair trade practice."). In this District, this is required regardless of whether the alleged fraud is an active representation or a passive omission. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010).

## ANALYSIS

As mentioned earlier, Third-Party Plaintiffs have asserted a total of five claims. PBG and EPS seek dismissal of only the claims for civil theft, violation of the CCPA, conspiracy to commit civil theft, and joint venture. The Court will address them in the same order as the Motion.

**I.      Motion to Dismiss**

    A.     <u>CCPA Claim (Count 3)</u>

The CCPA was enacted to deter and punish "businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud." *Rhino Linings United States v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 146 (Colo. 2003). To state a private cause of action under the CCPA, a plaintiff must show

> (1) the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered the injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*UnitedHealth Grp., Inc.*, 805 F. Supp. 2d at 1120 (D. Colo. 2011) (quoting *Rhino Linings*, 62 P.3d at 146-47).

A plaintiff must prove all elements of a CCPA claim; "otherwise the claim fails as a matter of law." *Id*. If a plaintiff proves all five elements, remedies include injunctive relief, civil penalties including treble damages, and attorney fees. *Id.* (quoting Colo. Rev. Stat. §§ 6-1-110, 6-1-113).

6

PBG and EPS argue that Third-Party Plaintiffs fail on the third element of the CCPA claim, public impact. Public impact is determined by three factors: "(1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers; and (3) evidence that the challenged practice has previously impacted other consumers or has significant potential to do so in the future." *Dean Witter Reynolds, Inc. v. Variable Annuity Life Ins. Co.*, 373 F.3d 1100, 1113 (10th Cir. 2004) (quoting *Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998)). Courts broadly interpret the CCPA to "effectuate its remedial purpose[;]" however, claims that do not affect the public are not actionable under the CCPA. *Id.* at 1113. If the parties have equal bargaining power and the affected party is the "sole consumer," it is a "private wrong." *Lewis*, 969 P.2d at 222.

An action that does or could affect consumers with "relatively little sophistication and bargaining power" shows public impact under the CCPA. *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1186 (D. Colo. 2002). In *Dean Witter Reynolds*, the Tenth Circuit found that consumers without "significant financial expertise" and who are "unlikely to be represented by counsel in their day-to-day dealings" lack buying power. 373 F.3d at 1114. There, the plaintiff alleged particular CCPA violation that could affect two million accounts owned by other consumers. 373 F.3d at 1114; *see also Loughridge*, 192 F. Supp. 2d at 1185 (holding the sale of twenty-five million linear feet of faulty hose sold to distributors and contractors targeted a consumers and satisfied the public impact element). The court held that a practice with the potential to impact such an amount of consumers with little bargaining power established the necessary public impact for a CCPA claim. *Dean Witter Reynolds*, 373 F.3d at 1114.

A private contract can be subject to a CCPA claim so long as the ultimate targets of the challenged practice are consumers. *Ivar v. Elk River Partners, Ltd. Liab. Co.*, 705 F. Supp. 2d

1220, 1242 (D. Colo. 2010). In *Ivar*, a court in this District held that "advertisements [for lots of land] containing false pricing information" that were given to "various agents, brokers, and purchasers" constituted a "broad scheme" to target consumers. *Id*. *See also Loughridge*, 192 F. Supp. 2d at 1185 (holding that a contract between a tire manufacturer and a provider had a public impact because the product sold "ultimately targeted the consumer"). There, the court also noted that "bare statements," such as "[the defendant's] deliberate and fraudulent scheme to deceive the public and convince prospective purchasers that the lots in Marabou Ranch were worth more than they were actually worth," were insufficient to state a CCPA claim under Rule 9(b). *Ivar*, 705 F. Supp. 2d at 1242; *see Vickerie v. Diversified Inv.*, No. 19-cv-03256-REB-KMT, 2020 WL 9432908, at *6 (D. Colo. Nov. 13, 2020) (holding "allegations of deceptive trade practices under the CCPA are subject to Rule 9(b)'s heightened pleading standard").

Third-Party Plaintiffs allege that the failure to disclose Chalker's commission and compensation as well as "waylaying" the Funds between EPS's and PBG's accounts constitute public impact. ECF 50 at 10, ¶ 31. On its face, equal bargaining power does not favor a public impact claim. Third-Party Plaintiffs do not "lack significant [business] expertise," and this is further supported by allegations in the pleadings as Third-Party Plaintiffs found new vendors for debit and credit card processing after parting ways with PBG. *Dean Witter Reynolds*, 373 F.3d at 1113; ECF 50 at 7, ¶ 13.

Likewise, the Third-Party Complaint does not state that a large number of consumers were, could have been affected by, or were the ultimate target of PBG's and EPS's challenged practice. Third-Party Plaintiffs are all under the ownership of David Lindsey and his brother, Libe Lindsey; therefore, there is only a "sole consumer" affected by this practice. ECF 44, at 2, ¶ 2; *Lewis*, 969

P.2d at 222. The alleged failure to disclose Chalker's commission and the Funds siphoned between EPS and PBG are aimed at a sole consumer. Thus, it is "a private wrong." *Lewis*, 969 P.2d at 222.

Third-Party Plaintiffs reference an FTC Complaint as evidence of a challenged practice that has already affected or could affect consumers. *Federal Trade Commission v. Electronic Payment Solutions of America, Inc.*, No. 2:17-cv-02535-DJH, 2017 WL 3283409, ¶ 53 (D. Ariz. July 28, 2017). Third-Party Plaintiffs argue the FTC Complaint establishes EPS's pattern of "fraudulent and deceptive trade practices relating to the sales of the same payment processing services." ECF 50 at 11, ¶ 34. Third-Party Plaintiffs fail to demonstrate that the FTC Complaint concerning EPS's protocol in handling suspect merchant applications is relevant to the contracts or Funds. The mere violation of FTC regulations does not mean those same practices violate the CCPA. *E.g., Colo. Coffee Bean, Ltd. Liab. Co. v. Peaberry Coffee Inc.*, 251 P.3d 9 (Colo. App. 2010) (holding that defendant's alleged disclosure violated FTC regulations but not the CCPA). The FTC Complaint and Third-Party Plaintiffs' Funds concern two unrelated components of EPS's business and do not demonstrate a pattern of impacting consumers. Even if the FTC Complaint did amount to a cognizable pattern, the CCPA claim still falls short of a plausible claim. In the FTC Complaint, the twenty-three suspect accounts that were relevant to the case were referred to entirely as "merchant" rather than accounts for consumers. *Federal Trade Commission*, 2017 WL 3283409, ¶ 57. To prove public impact, Third-Party Plaintiffs must provide relevant facts for a cognizable pattern as to *consumers*; absent this, the CCPA claim cannot survive a motion to dismiss under Rule 9(b). *Ivar*, 705 F. Supp. 2d at 1242.

The Third-Party Complaint also fails under Rule 12(b)(6). Third-Party Plaintiffs' statements, including "EPS's and PBG's unfair and deceptive acts significantly impact the public as actual or potential consumers of EPS's and PBG's processing services" (ECF 50, 11, ¶ 35), are

9

conclusory allegations. *Twombly*, 550 U.S. at 555 (holding that a claim must contain more than labels and conclusions); *see Ivar* 705 F. Supp. 2d at 1242. For the foregoing reasons, the Court grants the Motion as to the CCPA claim.

B. Civil Theft Claim (Count 1)

"To state a claim for civil theft, a plaintiff must allege the elements of criminal theft: that the defendant knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception, and acts intentionally or knowingly in ways that deprive the other person of the property permanently." *Seale v. Peacock*, No. 19-cv-03559-KMT, 2020 WL 5076749, at *2 (D. Colo. Aug. 27, 2020) (quoting *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016) (quotation marks omitted)). Importantly, "civil theft, like criminal theft, requires the *specific intent* of the defendant to *permanently* deprive the owner of the benefit of the property." *Id.* (emphasis added). The complaint must allege enough plausible facts to establish a mental state to deprive one of property.

Merely demonstrating a business relationship and the potential for intent or knowledge does not amount to civil theft. In *Bright Sols., LLC v. A+ Prods*, this Court held that prior business dealings and repeated threats by an individual did not constitute an intent to permanently deprive a plaintiff of property. No. 20-cv-03335-MEH, 2021 WL 2935942, at *11 (D. Colo. July 13, 2021); *see also Van Rees,* 373 P.3d at 608 (holding that a civil theft claim that does not provide a requisite mental state fails). Third-Party Plaintiffs argue their civil theft claim does not in fact fall within the purview of Rule 9(b), citing *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212 (D. Colo. 2012). However, the court there described the instances in which civil theft could occur rather than describing the applicability of Rule 9(b) to civil theft: "[T]heft may occur where a person simply takes another's property without authorization, or in more complicated circumstances, such as

10

where the person, via deception, obtains the owner's authorization to take the property." *Id*. (quoting *West v. Roberts*, 143 P.3d 1037, 1040 (Colo. 2006)).

Third-Party Plaintiffs' argument attempts to distinguish between theft without authorization and theft without deception. Yet, this argument is not supported by other authorities holding that "the requirement of particularity in [Rule] 9(b) has been construed to apply to claims sounding in fraud." *State Farm Mut. Auto. Ins. Co. v. Parrish*, 899 P.2d 285, 289 (Colo. App. 1994) (quoting *Zucker v. Katz*, 708 F. Supp. 525, 530 (S.D.N.Y. 1989) (quotation marks omitted)). Regardless, claiming that "EPS knowingly obtained control" over the Funds "with the intent to permanently deprive" Third-Party Plaintiffs of the Funds does not demonstrate the requisite mental state for PBG or EPS. *Van Rees*, 373 P.3d at 608; *see also Scott v. Scott*, 428 P.3d 626, 633 (Colo. App. 2018) (holding a "single, conclusory statement" about a defendant's mental state "is not entitled to an assumption of truth"). As required in Rule 9(b), "[t]he who, what, when, where, and how" for PBG's and EPS's intent is absent from this complaint and cannot be inferred from conclusory statements. *United States ex rel. Sikkenga*, 472 F.3d at 726–27; ECF 50; ECF 56.

In the absence of PBG's or EPS's mental state, there is no plausible civil theft claim under Rule 12(b)(6) as well. *See Seale* 2020 WL 5076749 at *7 (dismissing a civil theft claim under Rule 12(b)(6)); *see also Scott*, 428 P.3d at 634 (dismissing civil theft claim under Colo. R. Civ. P. 12(b)(5)). For these reasons, the Court grants the motion as to the civil theft claim.

   C.   <u>Conspiracy Claim (Count 4)</u>

For a civil conspiracy claim under Colorado law, a plaintiff must show that the conspiracy involves: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." *Scott v. Hern*, 216 F.3d 897, 918 (10th Cir. 2000) (quoting *Nelson v. Elway*, 908 P.2d 102,

11

106 (Colo. 1995)). "A plaintiff must allege course of conduct and other circumstantial evidence . . . [providing] some indicia of agreement in an unlawful means or end." *Medved v. Deatley*, No. 12-cv-03034-PAB-MEH, 2013 WL 4873054 at *10 (D. Colo. Sep. 11, 2013) (quoting *Schneider v. Midtown Motor Co.*, 854 P.2d 1322, 1327 (Colo. App. 1992)). Furthermore, "[i]f the [alleged acts] that constitute the underlying wrong" do not give rise to a cause of action, the conspiracy claim also fails. *West-Helmle v. Denver Dist. Attys. Office*, No. 19-cv-02304-RM-STV, 2021 WL 4046398, at *15 (D. Colo. May 3, 2021) (quoting *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003)).

Third-Party Plaintiffs rely on *Regas Christou v. Beatport LLC* to support their argument that common ownership qualifies as a meeting of the minds. 849 F. Supp. 2d 1055 (D. Colo. 2012). There, the plaintiff used statements from witnesses to prove that a conspiracy to monopolize took place. *Id*. at 1063. The court held that the same operative facts supporting the conspiracy to monopolize supported a claim under the CCPA and denied a motion to dismiss. *Id.* at 1079.

Unlike the plaintiffs in *Beatport LLC*, Third-Party Plaintiffs do not provide facts to show a meeting of the minds between PBG and EPS. *Id*. at 1072. A meeting of the minds cannot be inferred from the "mere fact that [PBG and EPS] came into contact" through joint ownership. *Hern*, 216 F.3d at 918. Third-Party Plaintiffs contend "the withholding of the funds by EPS took place around the same timeframe (April 2020) that Argenta and Bid ceased using PBG and EPS to process transactions" (ECF 56, 6), yet this speculation on a timeframe does not provide material facts that a meeting of the minds took place, unlike the statements from *Beatport LLC*. 849 F. Supp. 2d at 1079; *see also Peterson v. Grisham*, 594 F.3d 723, 731 (10th Cir. 2010) (applying Oklahoma civil conspiracy law and finding that "close temporal proximity" does not prove illegal activity).

The motion to dismiss a civil conspiracy claim in *Beatport LLC* was denied because other claims survived. There, the defendant argued the "civil conspiracy [claim] should be dismissed" because the claims for monopoly and anti-trust failed. 849 F. Supp. 2d at 1055. The court rejected that argument, noting the surviving monopoly claim "may serve to fulfill the [fourth] element of a [civil conspiracy claim,] one or more unlawful overt acts." *Id*.

Here, both the CCPA and civil theft claims that could amount to an "overt unlawful act" have been dismissed. *West-Helmle*, 2021 WL 4060634, at *15. In the absence of an overt unlawful act, Third-Party Plaintiffs cannot successfully meet the fourth factor of a civil conspiracy claim. *Id*. Accordingly, because Third-Party Plaintiffs do not sufficiently allege a meeting of the minds between PBG and EPS or any overt unlawful acts, the Court must grant the motion as to the civil conspiracy claim. *Medved*, 2013 WL 4873054, at *11 (quoting *Iqbal*, 556 U.S. at 679).

D. Joint Enterprise/Venture Claim (Count 5)

A joint venture relationship exists when "(1) there is a 'joint interest in the property by the parties sought to be held as partners'; (2) express or implied agreements to share profits and losses of the venture; and (3) actions and conduct showing cooperation." *Corum Real Estate Grp., Inc. v. Blackrock Realty Advisors, Inc.*, No. 09-CV-01680-DME-MEH, 2010 WL 1957226, at *4 (D. Colo. May 14, 2010) (quoting *Sleeping Indian Ranch, Inc. v. West Ridge Group, LLC*, 119 P.3d 1062, 1069 (Colo. 2005)). A plaintiff must prove all three elements of a joint venture and must allege detailed factual statements to state a plausible claim. *Id.* at 14-15 (holding that a joint venture claim establishing parties had signed a written a price sharing structure could survive a motion to dismiss).

In *D & R's Aspen Ret. Plan, Ltd. Liab. Co. v. DeGraff*, a court in this District held that a plaintiff failed to allege facts establishing a joint venture. No. 09-cv-01963-LTB-CBS, 2010 WL

13

4024013, at *5 (D. Colo. 2010). The court noted that the plaintiff lacked documents, such as tax returns and accounts of a partnership, that could establish a joint venture. *Id*. The court held "the pooling of property, money, assets, skill, or knowledge does not create the relationship of joint venture in the absence of intent as manifested from the facts and circumstances involved in each particular case." *Id*. (quoting *W. Ridge Group*, 119 P.3d at 1069 (Colo. 2005)).

For similar reasons to the conspiracy claim, the joint venture claim fails as well. Third-Party Plaintiffs allege "PBG and EPS are jointly liable for either entity's unlawful or tortious conduct[;]" since the CCPA and civil theft claims have been dismissed, there is no unlawful conduct for which to be jointly liable. Like the complaint in *DeGraff*, Third-Party Plaintiffs' allegation that "there is either an express or implied agreement between the two to share jointly in the profits or losses" from processing third-party transactions (ECF 50, 12, ¶ 42) does not show a joint venture because it lacks intent manifested from facts. 2010 WL 4024013, at *11. Simply stating that these two companies have an economic connection is conclusory and not a sufficient allegation of fact to state a plausible claim; accordingly, the Court will grant the Motion as to the joint venture claim. *Twombly*, 550 U.S. at 555.

## II. Leave to Amend

"In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" *Triplett v. LeFlore Cty., Oklahoma*, 712 F.2d 444, 446 (10th Cir. 1983) (quoting 3 Moore's Federal Practice, ¶ 15.10 & n. 2 (1983)). However, "[a]t least outside of the pro se context, when a litigant fails to put the district court on adequate notice—in a legally cognizable manner—of his request for leave to amend, then the district court will not be faulted for failing to grant leave to amend." *Doe v. Heil*, 533 F. App'x 831, 847 (10th Cir. 2013). Here, the Court is dismissing all claims against PBG and

14

EPS. Third-Party Plaintiffs are represented by counsel, but Third-Party Plaintiffs have not amended their Third-Party Complaint yet. Third-Party Plaintiffs have not requested, through motion or otherwise, leave to amend. It would be within this Court's discretion to not grant leave to amend *sua sponte*. *Id.* ("[W]e will not upset the district court's dismissal with prejudice on the grounds that it failed sua sponte to give a [plaintiff] —who was represented by counsel—an opportunity to file an amended complaint."); *see Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999) ("Although leave to amend should be liberally granted, a trial court is not required to sua sponte grant leave to amend prior to making its decision [to dismiss]."). Yet, the Court cannot, at this point, find that permitting amendment would prove futile. Accordingly, for the dismissal of the claims at issue in the Motion, the Court does so without prejudice.

## CONCLUSION

Accordingly, the Motion [filed August 13, 2021; ECF 53] is **granted**. The claims for violation of the CCPA, civil theft, conspiracy, and joint venture are dismissed without prejudice. Third-Party Plaintiffs are given leave to amend their pleading within fourteen days of this Order. *See* D.C.Colo.LCivR 15.1(b).

Entered this 9th day of November, 2021, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge