IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02439-CYC

PAYMENT BROKERS GROUP, LLC,

     Plaintiff/Counter Defendant,

v.

AGENTRA, LLC,
MYHEALTHPASS, LLC,
INNOVATIVE HEALTH INSURANCE PARTNERS, LLC, and
BID DENTAL LLC,

     Defendants/Third-Party Plaintiffs/Counter Claimant,

v.

ELECTRONIC PAYMENT SYSTEMS, LLC,

     Defendant/Third-Party Defendant.

---

## ORDER

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Defendants Agentra, LLC, BID Dental, LLC, MyHealthPass, LLC, and Innovative Health Insurance Partners, LLC move for a new trial, asserting that the final judgment entered in this case is not supported by evidence and is contrary to law. ECF No. 178 at 1–2. Because the Court's decision contained no manifest error of law or mistake of fact, the motion is **DENIED**.

## BACKGROUND

The Court assumes familiarity with its previous findings of fact and, accordingly, provides only a brief background of this case. Each defendant entered into a Merchant Application and Processing Agreement ("MAPA") with Electronic Payment Systems ("EPS"),

an independent sales organization that provides merchants a contract with it and a sponsor bank, to allow the defendants to conduct credit card transactions with card associations. ECF No. 150 ¶¶ 3–4, 9; ECF Nos. 117-1, 117-2, 117-3, 117-4. Esquire Bank is the sponsor bank in each of the MAPAs, but did not sign any of the contracts. ECF No. 150 ¶¶ 12–13. Each MAPA has identical terms, including a 3.79% credit card discount rate, which acts like a credit card processing fee, and is paid to EPS. *Id.* ¶ 9; ECF Nos. 117-1, 117-2, 117-3, 117-4; ECF No. 132 at 7.

After entering into the MAPAs, the defendants then entered into contracts with the plaintiff, a marketing arm of EPS, each entitled Preferred Pricing and Business Continuation Plan ("Preferred Pricing Plans"). ECF No. 150 ¶¶ 18–21; ECF No. 156 at 113:8–10. The Preferred Pricing Plans do not reference the MAPAs. ECF No. 150 ¶ 22. Each Preferred Pricing Plan provides that the defendants "will receive a 'Preferred Discount Rate' for credit and debit card processing (2.89% Base Rate) as well as ACH transactions that go into effect as of March 1, 2019 for all accounts controlled by [the plaintiff]. This rate may change from time-to-time based on the changes in costs to [the plaintiff]." *Id.* ¶ 23. Each Preferred Pricing Plan requires:

> Without exception, ALL accounts controlled by [the Defendants] shall continue to process transactions at the current dollar volume or higher for a period of not less than THREE-(3) years from the March 1, 2019. Dollar volume of the aforementioned transactions shall constitute no less than 80% of all credit and debit card processing as well as ACH transaction[.] [The Plaintiff] will make all efforts to provide Merchant Services (the 'Processing Service') to [the Defendants] (subject to Sponsoring Bank approval and in compliance with all Rules and Regulations) for the duration of this Agreement.

*Id.* ¶ 24. Beginning in March 2019, the monthly billing statements show that each defendant received the preferred rate — lowered from 3.79% to 2.89%. *Id.* ¶¶ 25–28. In 2020, the defendants stopped using EPS for their credit card processing. *Id.* ¶ 29.

The plaintiff then initiated this action, asserting a breach of contract claim and unjust enrichment claim against the defendants. ECF No. 41 at 5–7. On July 15, 2024, then-Chief

Magistrate Judge Michael E. Hegarty held a one-day non-jury trial on the matter. ECF No. 151. On January 3, 2025, Judge Hegarty entered his Findings of Fact and Conclusions of Law (the "Order"), ordering in favor of the plaintiff. ECF No. 169. A week later, the plaintiff filed a motion to amend the judgment to include prejudgment and post-judgment interest. ECF No. 171. The case was then reassigned to the undersigned upon Judge Hegarty's retirement. ECF No. 175. This Court then entered judgment in favor of the plaintiff, awarding it prejudgment and post-judgment interest. ECF No. 177. This motion followed. ECF No. 178.

## ANALYSIS

The defendants move for a new trial, asserting that the final judgment entered in this case is not supported by evidence and is contrary to law. ECF No. 178. Specifically, the defendants assert that the Court erred in finding that: (1) the Preferred Pricing Plans do not reference any MAPA;[1] (2) the plaintiff has standing to bring its claims; (3) the Preferred Pricing Plans are standalone contracts, not amendments to the MAPAs; (4) the Preferred Pricing Plans are enforceable contracts; (5) the plaintiff performed under the Preferred Pricing Plans; (6) the defendants breached the Preferred Pricing Plans; (7) the plaintiff prevails on its breach of contract claim against the defendants; and (8) the plaintiff is entitled to a damages award of $1,358,649.69, split amongst the defendants. *Id.* at 3.

After a nonjury trial, a new trial may be granted "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). When a party files a motion for a new trial, a "court may . . . open the judgment if one has been entered,

---

[1] The defendants do not provide any argument for this assertion. As such, the Court does not consider it. *See Hunter Douglas Inc. v. Great Lake Woods, Inc.*, 15-CV-00106-REB-KLM, 2016 WL 1033622, at *1 n.2 (D. Colo. Feb. 24, 2016), *report and recommendation adopted*, 2016 WL 1028321 (D. Colo. Mar. 15, 2016).

take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2). A court should grant a motion under Rule 59(a)(2) only "to correct manifest errors of law or fact, or, in some limited situations, to present newly discovered evidence." *Lyons v. Jefferson Bank & Tr.*, 793 F. Supp. 989, 991 (D. Colo. 1992), *aff'd in part, rev'd in part*, 994 F.2d 716 (10th Cir. 1993). A manifest error is "[a]n error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Error*, Black's Law Dictionary (12th ed. 2024).

A judgment, however, "should not be set aside except for substantial reasons." *Reyes v. Snowcap Creamery, Inc.*, No. 11-CV-02755-JLK-KMT, 2014 WL 1101446 (D. Colo. Mar. 20, 2014) (citing 11 Wright & Miller's Federal Practice & Procedure § 2804 (3d ed. & 2013 update)). The purpose of Rule 59(a)(2) is not "to introduce new evidence that was available at the time of trial but was not proffered, to advance new theories, or to secure a rehearing on the merits." *Lyons*, 793 F. Supp. at 991 (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986)). The authority to grant a new trial is addressed to the sound discretion of the district court. *Rodgers v. Hyatt*, 697 F.2d 899, 901 (10th Cir. 1983) (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).

The defendants have not satisfied this standard. Instead, the defendants largely reassert the same arguments that they have previously raised. But a motion for new trial "'should not be used to re-litigate prior matters that . . . simply have been resolved to the movant's dissatisfaction.'" *Bernard v. Grefer*, No. 14-887, 2015 WL 3485761, at *6 (E.D. La. June 2, 2015) (quoting *Voisin v. Tetra Techs., Inc.*, No. 08-1302, 2010 WL 3943522, at *2 (E.D. La. Oct. 6, 2010)). "When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and

4

should not be granted." *Bernard*, 2015 WL 3485761, at \*6 (quoting *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 548, 566 (E.D. La. 2013)); *see Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) ("Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." (quoting *Del Rio Distributing, Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n. 3 (5th Cir. 1979))).

The defendants protest this conclusion. They assert that prejudicial error occurred. ECF No. 180 ¶ 2. But the defendants' arguments boil down to disagreements in how the Court weighed the evidence. Their arguments, then, fail to explain how the Court disregarded case law or evidence. Of course, "[m]anifest error does not mean that one does not like the outcome of a case, or that one believes the court did not properly weigh the evidence. . . . Rather, manifest error is an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Daughtry v. Army Fleet Support, LLC*, 1:11-cv-153-MHT, 2014 WL 466100, \*2 (M.D. Ala. Feb. 5, 2014) (internal quotation marks and citations omitted).

The defendants' failure to point out manifest error alone forecloses the relief it seeks. Specific consideration of the defendants' arguments only strengthens that conclusion.

## I. <u>Standing</u>

The defendants first assert that the plaintiff does not have standing. ECF No. 178 ¶¶ 7–16. To have standing under Colorado law, "a plaintiff must satisfy a two-part test requiring (1) that the plaintiff 'suffered injury in fact,' and (2) that the injury was to a 'legally protected interest as contemplated by statutory or constitutional provisions.'" *Barber v. Ritter*, 196 P.3d 238 (Colo. 2008) (quoting *Wimberly v. Ettenberg*, 570 P.2d 535, 539 (1977)).

To the first prong, that the plaintiff suffered an injury in fact, the defendants assert that the Court erred by failing to find that the plaintiff incurred an injury resulting from the defendants' breach. ECF No. 178 ¶ 12 & n. 30. But in its Order, the Court noted that it previously determined the plaintiff has standing in an order on a motion for summary judgment. ECF No. 169 at 8. There, the Court held that the plaintiff established that it had suffered an injury in fact because the defendants "received a lower discount rate yet failed to deliver 'the promised volume of credit card processing for the three-year period.'" *Payment Brokers Grp., LLC v. MyHealthPass, LLC*, No. 20-CV-02439-MEH, 2024 WL 3251943, at *6 (D. Colo. May 31, 2024). The defendants do not directly challenge this finding. Instead they argue that EPS, not the plaintiff, suffered injury. That argument is rejected below. *See supra* section III. As such, the defendants do not demonstrate a manifest error in the Court's conclusion.

To the second prong, that the plaintiff's injury be related to a legally protected interest, the defendants assert that because the plaintiff was not a party to the MAPAs, it lacks a legal interest in the claim asserted. ECF No. 178 ¶ 11. The Court, however, previously found that as a party to the Preferred Pricing Plans, the plaintiff could bring its asserted claims because they arise from a breach of those contracts. *Payment Brokers Grp.*, 2024 WL 3251943, at *6 (citing *Barber*, 196 P.3d at 245–46). Again, the defendants do not challenge this finding directly, instead rehashing their arguments that the Preferred Pricing Plans are amendments to the MAPAs. Again, that argument is rejected below. *See supra* section II. As such, the defendants do not show a manifest error regarding standing.

## II.    **Breach of Contract**

The defendants next assert that the Court erred in finding that they breached the contract. ECF No. 178 ¶ 5. To prove a claim for breach of contract, a plaintiff must show "(1) the existence of a contract; (2) performance by the plaintiff or some justification for

nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted). The defendants take issue with the first two factors.

The defendants first argue that the Court erred in finding that the Preferred Pricing Plans are contracts, when instead, they are amendments to the MAPAs. ECF No. 178 ¶¶ 8–11. The Court has previously considered this argument. *See Payment Brokers Grp.*, 2024 WL 3251943, at *5; ECF No. 169 at 12. The defendants fail to demonstrate how the Courts previous holding arises to manifest error. Instead, the defendants simply attempt to relitigate the issue, which is impermissible under Rule 59. *Lyons*, 793 F. Supp. at 991. Still, "[a] contract is formed when an offer is made and accepted, and the agreement is supported by consideration." *Walshe v. Zabors*, 178 F. Supp. 3d 1071, 1081 (D. Colo. 2016) (citing *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008). Here, it is no manifest error to find all these elements satisfied: the plaintiff offered a discounted rate and in return asked the defendants that, for a period of three years, they provide 80% of their processing volume, and the defendants accepted these terms. ECF No. 169 ¶ 41. The defendants' argument that the Personal Pricing Plans are invalid because Esquire Bank is not named does not move the needle in their favor. This argument, instead, is better directed at Esquire Bank. *See, e.g.*, *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."). The Court, then, finds no manifest error.

The defendants next argue that the Court erred in finding that the plaintiff performed under the Preferred Pricing Plans because the contracts refer to accounts "controlled" by the plaintiff, but do not specify what those accounts are, and the plaintiff does not have any employees that could perform its obligations. ECF No. 178 ¶¶ 15, 17–20. "The 'performance' element in a breach of contract action means 'substantial' performance." *W. Distrib. Co.*, 841

7

P.2d at 1058.  "A party," then, "has substantially performed when the other party has substantially received the expected benefit of the contract." *Stan Clauson Assoc., Inc. v. Coleman Brothers Const., LLC*, 297 P.3d 1042, 1045 (Colo. App. 2013). Here, the defendants expected to receive a discounted rate. And the defendants stipulated that they received a discounted rate. ECF No. 150 ¶¶ 25–28. That the contract was vague as to what accounts were controlled by the plaintiff does not weigh in the defendants' favor. Indeed, an "offer must not merely be complete in terms, but the terms must be sufficiently definite to enable the court to determine whether the contract has been performed or not." *Newton Oil Co. v. Bockhold*, 176 P.2d 904, 908 (Colo. 1946). As previously found by this Court, the plaintiff "provided the discount rate stated in the Preferred Pricing Plans to each of the four Defendant entities named in the contracts." ECF No. 169 at 14. Accordingly, the plaintiff performed under the contract. The Court, then, finds no manifest error.

For the foregoing reasons, the Court did not commit a manifest error in finding that the defendants breached the contract.

### III.    Damages

The defendants' final argument is that the damages awarded arise from a calculation that is too speculative. This argument, though, rehashes ones raised at trial. *See* ECF No. 164 at 2–4. This alone is reason enough to deny the motion. *See Briscoe v. Stewart*, CV 19-29-SDD-SDJ, 2024 WL 1156525, at *1 (M.D. La. Mar. 18, 2024). Considering the argument's merit yields no different result.

"Generally, '[d]amage awards in contract cases attempt to place the parties in the same financial position they would have occupied had the contract terms been fulfilled.'" *Colorado Nat'l Bank of Denver v. Friedman*, 846 P.2d 159, 174 (Colo. 1993) (quoting *Republic Nat'l Life Ins. Co. v. Red Lion Homes, Inc.*, 704 F.2d 484, 488 (10th Cir. 1983)). But "where claims for

damages are premised on breaches of contracts, '[d]amages that are merely speculative, remote, imaginary, or impossible of ascertainment, cannot be recovered.'" *Id.* (quoting *Boyle v. Bay*, 254 P. 156, 158 (1927)). Mathematical certainty, however, is not required. *Tull v. Gundersons, Inc.*, 709 P.2d 940, 944–45 (Colo. 1985). "In proving the amount of damages it is sufficient for a plaintiff to provide '[a] reasonable basis for computation and the best evidence obtainable under the circumstances of the case which will enable the trier of the facts to arrive at a fairly approximate estimate of the loss.'" *Id.* at 945 (quoting *A to Z Rental, Inc. v. Wilson*, 413 F.2d 899, 908 (10th Cir. 1969)). Here, the Court relied on the plaintiff's "blended buy" theory of costs. ECF No. 169 at 15–16. By doing so, the Court concluded that the computation was reasonable and that the evidence supported its conclusion. *Id.* As such, the Court did not speculate when awarding the plaintiff damages.

The defendants protest. They assert that the Court improperly applied an adverse presumption to allow the plaintiff to calculate damages. ECF No. 178 at 11. It did not. That the Court made note of the defendants' poor recordkeeping and nonproduction of documents goes to fact that the plaintiff produced "the best evidence obtainable under the circumstances." *Tull*, 709 P.2d at 945. It did not sub silentio impose a discovery sanction.

The defendants raise one final matter. They assert that the plaintiff did not benefit from the Preferred Pricing Plans because all benefits and profits provided under the contract were given to EPS. ECF No. 178 at 9. The defendants, however, cite no case law for this assertion. Their failure to do so "suggests either that there is no authority to sustain [their] position or that [they] expect[] the court to do [their] research." *Rapid Transit Lines, Inc. v. Wichita Devs., Inc.*, 435 F.2d 850, 852 (10th Cir. 1970). And so, their motion for a new trial will not be granted on unsupported grounds. *See, e.g.*, *Ansari v. Jimenez*, No. 2:20-CV-10719, 2024 WL 3858308, at *9

(E.D. Mich. Aug. 19, 2024). Still, the Court notes that this case is akin to *Wells Ranch, LLLP v. Ellinger & Cappel, LLC*, 19-CV-1120-STV, 2020 WL 2539066 (D. Colo. May 19, 2020). Though *Wells Ranch* involved standing, the principle remains the same — the defendants contracted with the plaintiff, not EPS, to receive a discounted rate, and so, the plaintiff may bring this claim for damages. The defendants have cited no law compelling the conclusion that because the plaintiff passed its profits to EPS, it robbed itself of all standing and damages. Intuitively, what the plaintiff decided to do with its profits is its decision — it does not obviously limit or eliminate the damages owed here.

For the foregoing reasons, the Court did not commit a manifest error in awarding the plaintiff damages totaling $1,358,649.69. The defendants do not take issue with the Court awarding the plaintiff prejudgment and post-judgment interest.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the defendants' motion for a new trial, ECF No. 178, is DENIED.

DATED this 18th day of March, 2026, at Denver, Colorado.

BY THE COURT:

_____

Cyrus Y. Chung
United States Magistrate Judge

10